Catharine Finnegan, Bridget Burke and Margaret and Thomas Finnegan, by their guardian, Catharine Finnegan, *v.* The Pennsylvania Trust Company of Reading, Pa., trustee under the will of Susan F. O'Connor, Horace O'Connor, The Euclid Coal and Coke Company, Joseph Dietrich and W. I. Stineman, appellant.

*Mines and mining—Title by adverse possession not affected by change in paper title to minerals.*

As between the parties and their privies, a conveyance of underlying coal, the grantor retaining the surface, effects severance in title; and the recording of the conveyance takes the place of livery of seisin, and the subsequent possession of the holder of each estate follows his right; but as between the grantee and a third party who is in the actual, open, adverse, exclusive and peaceable possession of the land at the time, the recording of the instrument is not equivalent to entry, and, there being no other interruption of his possession, when the full period of twenty-one years from its inception has elapsed, title to the land becomes perfect.

*Coal lease—When construed as a sale of coal.*

Where the fair interpretation of a written agreement relating to coal or minerals shows that a sale of such coal was intended by the parties, and a right to mine and remove all the coal is conferred by it in express terms or by plain and necessary implication, it will constitute a sale notwithstanding a term is created within which the coal is to be taken out.

Argued May 3, 1897. Appeal, No. 21, April T., 1897, by W. I. Stineman, from judgment of C. P. Cambria Co., Sept. T., 1895, No. 509, on verdict for plaintiffs. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for mining coal. Before LOVE, P. J., of the 49th judicial district specially presiding.

It appeared from the record and evidence that this action was instituted to recover the value of coal mined and removed from under certain lands in Conemaugh township, Cambria county. The plaintiffs claimed title by adverse possession for twenty-one years immediately prior to the alleged trespass in 1895. The defendants relied on the paper title, the particulars of which are set out in the opinion of the Superior Court.

Verdict and judgment for the plaintiff for $16.50 for 165 tons of coal at 10 cents per ton.

*Errors assigned* were (1) In answering the defendants' first point, which point was as follows: "That the agreement made on the 7th day of January, 1874, between Ross and O'Connor, on the one part, and E. W. Giddings on the other part, was, by its terms, a sale of the coal in and under the land described therein, and operated to create a severance of the coal from the surface. *Answer :* The lease of January 7, 1874, in our opinion, does not constitute a sale of the coal in place; nor did it work a severance of the coal from the surface, so as to affect the rights of a third party who was in adverse possession at the time, under a claim of right. The point is, therefore refused." (2) In answering the defendants' second point, which point was as follows: "That said agreement having been recorded, the purchaser thereof entered thereby into possession; and his possession thereafter was not affected by the state of the title to or the possession of the surface; and that possession of the surface, even for twenty-one years after the sale of the coal by said instrument, would not carry with it possession of the minerals below in the absence of proof of a hostile claim to the coal. *Answer :* If the agreement of January 7, 1874, constituted a sale of the coal in place, it being put upon record would be notice to a subsequent purchaser of the surface or fee. But it not being a sale to the plaintiffs by themselves or their predecessors in title, who claim to have been in continued, open and notorious possession of the ground in dispute since 1849, the recording of the lease cannot affect the rights of the parties in adverse possession, and acquired thereby prior to 1874. We cannot, therefore, affirm this point." (3) In answering the defendants' third point, which point was as follows: "That the plaintiffs have not shown such character of possession of the locus in quo by cultivation, enclosure or residence within marked and designated boundaries as to satisfy the jury that the ground under which the coal was mined and removed, for which this suit was instituted, is embraced within that part of the ground which they claim to have cleared and cultivated for twenty-one years past. *Answer :* This point involves a question of fact to be determined by the jury from the evidence, it showing a small house built along about 1851 or 1852 and land near the locus in quo cleared and farmed, in annual crops. We, therefore, refuse to affirm this point." (4) In answering the defendants' fourth point, which point was as fol-

lows: "That the plaintiffs cannot recover in this case because the defendant, Stineman, was in possession under color of title. *Answer:* This point is refused." (5) In holding and charging the jury as follows: "Margaret Finnegan, the mother of John Finnegan became possessed of this land by deed in December, 1849. What evidence of improvement was there prior to that time does not appear, but there was some. Michael Bracken testifies that it was cleared on the hill east of Harkin's line. Whether he designates over to the red oak or not I do not know, but some distance. Jacob Varner testifies to practically the same facts, and that he (John Finnegan) farmed oats, corn and grass in that place; and Mr. Keelan, as well as Mrs. Keelan, testifies to practically the same thing." (6) In holding and in charging the jury in reference to the agreement of January 7, 1874, as follows: "We say to you, on examination of that lease, that it did not constitute a sale of the coal in place; and even if it did, it could not affect the rights that had been acquired, if any had been acquired, by John Finnegan or his predecessors in title, to that land prior to its execution. Therefore it can have no particular force in determining the rights of these parties." (7) In holding and charging the jury as follows: "The only question for you to consider, from the evidence, is, where was that eastern line of the land claimed by the plaintiffs? Had it been cultivated and occupied up to that line, as they claim it now, more than twenty-one years prior to the commission of the trespass? If it had, then, did the defendants, or either of them commit any trespass upon it?" (8) In holding and in charging the jury as follows: "The plaintiffs would be entitled to recover in this action for the coal mined prior to the bringing of this suit, which was November, 1895. There has been some mining done since, the exact amount of which is not known, but it was included in the estimate of the surveyor who was there a few days ago." (9) In holding and in charging the jury as follows: "Now, gentlemen of the jury, you take this case and consider the evidence, under the instructions we have given you; and if you find that for many years, as testified to by the witnesses, that hill portion east of Harkin's line was cleared, occupied, farmed and fenced, that, as stated before, would give the plaintiffs title by prescription. If it was occupied adversely for a period of more than twenty-one years prior

to the commission of the trespass, if you arrive at that conclusion, then find from the evidence what amount of coal was mined under it and what its value was in place, and render your verdict accordingly against W. I. Stineman, the only one of the defendants that is shown to have committed any trespass."

*M. D. Kittell* of *Kittell & Little*, with him *M. B. Stephens*, for appellant. The lease in question is a grant of the interest in the land itself: Sanderson v. Scranton, 105 Pa. 469; Railroad Co. v. Sanderson, 109 Pa. 583; Montooth v. Gamble, 123 Pa. 240; Kingsley v. Coal & Iron Co., 144 Pa. 613; Lazarus' Estate, 145 Pa. 1; Timlin v. Brown, 158 Pa. 606; Plummer v. Coal & Iron Co., 160 Pa. 483; Coal Co. v. Wright, 177 Pa. 387; Duff's Appeal, 21 W. N. C. 491; Hope's Appeal, 29 W. N. C. 365; Fairchild v. Fairchild, 7 Cent. Rep. 873; Hancock's Estate 7 Kulp, 36.

The question is exclusively for the jury under instructions as to adverse possession: Handley v. Barrett, 176 Pa. 246. It has been abundantly decided that, after severance, title to the coal cannot be acquired by adverse possession of the surface: Cadwell v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 284; Iron Co. v. Lewis, 7 Cent. Rep. 515; Kingsley v. Coal & Iron Co., 144 Pa. 613; Plummer v. Coal & Iron Co., 160 Pa. 483; Coal Co. v. Northern Coal & Iron Co., 162 Pa. 114; Moreland v. Coal Co. 170 Pa. 33; Lulay v. Barnes, 172 Pa. 331; Powell v. Lantzy, 173 Pa. 543.

Applying the principles of the cases above cited to the facts in the present case we contend that by reason of the sale of the coal to Giddings, and the recording of his title the owners of the coal were then in possession of their separate estate which had been entirely cut off from the surface, that thereby the possession of Finnegan was interrupted in so far as the coal was concerned, and that thereafter the owner of the coal was no longer affected by the state of the title to or by the possession of the surface.

We contend further that the court erred in answering the fourth point submitted because W. I. Stineman had taken and was in possession under color of title. Having a prima facie title to support his possession the action of trespass cannot be maintained: Woodward v. Tudor, 81* Pa. 382; National Tran-

sit Co. v. Weston, 121 Pa. 485 ; Collins v. Beatty, 148 Pa. 65 ;
Giffin v. Pipe Lines, 172 Pa. 585.

*F. A. Shoemaker,* for appellees.—Every purchaser of land must
be presumed to know whether the possession is vacant or not;
and if a third person be in the actual and visible occupation of
the land at the time of the purchase it is sufficient to put him
on inquiry in order that he may know by what tenure or right
such person holds the possession. Whatever is sufficient to put
the party on inquiry is equivalent to notice : Jaques v. Weeks,
7 Watts, 261 ; Sailor v. Hertzog, 4 Whart. 259 ; Green v. Drinker,
7 W. & S. 440 ; Hottenstein v. Lerch, 104 Pa. 454.

It is scarcely necessary to cite authorities in support of the
title of the appellees. The whole line of decisions support it.
When a man enters upon, improves, fences and occupies part
of another man's tract of land and has the boundaries of his
claim surveyed and marked, including woodland not enclosed,
and for twenty-one years openly and exclusively uses the wood-
land as his own in connection with his improvements, as farmers
ordinarily do their woodland, excludes the constructive posses-
sion which the law usually attributes to the title and to the
owner's actual possession of the rest of his tract: Ament's Exr.
v. Wolf, 33 Pa. 331 ; Beaupland v. McKeen, 28 Pa. 124 ; Ewing
v. Alcorn, 40 Pa. 492 ; McArthur v. Kitchen, 77 Pa. 62 ; Hole
v. Rittenhouse, 25 Pa. 491.

Possession for twenty-one years visible, open, continuous, ad-
verse, exclusive and notorious, will give an absolute title to the
land : Moreland v. Moreland, 121 Pa. 580 ; Olewine v. Mess-
more, 128 Pa. 470.

OPINION BY RICE, P. J., July 23, 1897 :

This was an action of trespass for mining coal. As the case
was submitted to the jury it was made to turn on the question
of the plaintiffs' title by adverse possession for twenty-one
years immediately prior to the commission of the alleged tres-
pass in 1895. The defendants' contention was, in effect, that
in order to prove title in that way it was incumbent on the
plaintiffs to show such possession for twenty-one years prior to
January 7, 1874, the date of the coal lease to E. W. Giddings
from John Ross and Susan F. O'Connor, the then owners of

the paper title to the land in dispute. They requested instructions to the effect that this agreement was by its terms a sale of the coal in and under the land, and operated as a severance thereof from the surface; and, having been recorded, the purchaser entered thereby into possession, and his possession thereafter was not affected by the state of the title to or the possession of the surface. The court below held that the Giddings lease was not a sale of the coal in place, and did not work a severance of the coal from the surface so as to affect the rights of a third party who was in adverse possession at the time under a claim of right. It is conceded that if John Finnegan, under whom the plaintiffs claim, had been in the actual, adverse, exclusive and uninterrupted possession of the land in dispute for twenty-one years prior to the lease, his rights were not affected thereby. Possibly the jury might have found that fact if the question had been submitted to them, but it was not. And, as they well might have found that he had not had possession for the requisite length of time prior to 1874 it becomes necessary to determine what was the effect of the making and recording of the lease upon the subsequent possession of John Finnegan and those claiming under him. In the view we take of the case this is the only question we need discuss.

That minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface, is, of course, unquestioned. After severance of the surface from the underlying strata, whether by reservation or by express grant, the mineral right is an independent interest in land; it forms a distinct possession; is held upon a distinct title; and is as much the subject of sale, devise or inheritance and of separate taxation and incumbrance as the surface. The technical words, "grant, bargain and sell," or the like, are not necessary to the creation of a separate estate in the coal, provided the intention to sell the coal is manifest; and it is now too well settled to admit of argument, that an instrument which is in terms a demise of all the coal in, under and upon a tract of land, with the unqualified right to mine and remove the same, is a sale of the coal in place: and this, too, whether the purchase money stipulated for is a lump sum or is a certain price for every ton mined, and is called rent or royalty: Sanderson v. Scranton, 105 Pa. 469; R. R. Co. v. Sanderson, 109 Pa. 583; Montooth v. Gam-

ble, 123 Pa. 240 ; Kingsley v. Hillside C. & I. Co., 144 Pa. 613 ; Lazarus' Estate, 145 Pa. 1 ; Timlin v. Brown, 158 Pa. 606 ; Plummer v. Hillside C. & I. Co., 160 Pa. 483 ; Lehigh Coal Co. v. Wright, 177 Pa. 387 ; Hope's Appeal, 29 W. N. C. 365 ; Fairchild v. Fairchild, 7 Cent. Rep. 873. It was intimated in R. R. Co. v. Sanderson that there might possibly be a distinction between a perpetual lease, that is, one to continue until all the coal under the tract is mined, and a term lease, but this distinction has not been recognized in later cases. "Where a fair interpretation of the written agreement shows that a sale was intended by the parties and a right to mine and remove all the coal is conferred by it in express terms, or by plain and necessary implication, it will constitute a sale, notwithstanding a term is created within which the coal is to be taken out:" Kingsley v. C. & I. Co., supra. Construing the Giddings lease of 1874 in the light of the above cited decisions we conclude that it constituted a sale of all the coal, conditioned upon its being taken out within the period specified.

But it is to be observed that there is no evidence, at least none was admitted on the trial, that E. W. Giddings ever took actual possession under his lease. We have, then, the simple question whether the mere recording of a conveyance of the coal stops the running of the statute of limitations in favor of one in the actual, adverse and exclusive possession of the land under color of title at the time the conveyance was made. If it were a conveyance of the surface the question would be free from difficulty, and would require no discussion. Why should it be held that the mere recording of a conveyance of the coal has a different effect upon the continuity of the possession of the holder of the adverse title? We can discover no satisfactory reason for so holding. The cases do indeed decide that where, by deed, there has been a severance of the right to the surface from the right to the underlying coal, the owner of the minerals will not lose his right or his possession by any length of nonuser. And in such a case the owner or subsequent occupier of the surface can acquire no title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely: Seaman v. Vawdrey, 16 Ves. 390 ; Caldwell v. Copeland, 37 Pa. 427 ; Armstrong v. Caldwell, 53 Pa. 284 ; Phœnix Iron Co. v. Lewis, 7

Cent. Rep. 515; Kingsley v. Hillside C. & I. Co., 144 Pa. 613; Plummer v. Hillside C. & I. Co., 160 Pa. 483; Algonquin C. & I. Co. v. Northern C. & I. Co., 162 Pa. 114; Ashman v. Wigton, 9 Cent. Rep. 629. But in all of these cases the claim of title by possession of the surface had its inception after it and the underlying coal strata had been severed in title. They were then two distinct possessions, the possession of the holder of each estate being referable to his title, unless by unequivocal acts that would give title to a stranger he has extended it upward or downward, as the case may be. Of such a case it is held: "He (the owner of the coal) must be disseised to lose his right; and there can be no disseisin by act that does not actually take the minerals out of his possession:" Armstrong v. Caldwell, supra. But here disseisin of the coal as well as of the surface had actually taken place before their severance in title. One was as much out of the actual possession of the owner of the asserted legal title as the other. At the date of the lease, and for some years before, John Finnegan was in the actual, open, adverse, and exclusive possession of the land under a claim of right. His deed was on record, and, in connection with his possession, was notice to the world of the extent of his claim, which presumptively included not merely the surface but all beneath and above it, in accordance with the ancient common law maxim. He claimed, and was in possession of, the land, which, says Blackstone, "hath also, in its legal signification, an indefinite extent upwards as well as downwards:" 2 Bl. Com. 18. Neither he nor his successors in title ever did anything which could be construed as restricting their possession to the surface merely. Nor, as we have seen, did the purchaser of the coal attempt to oust them, unless the recording of his lease was an ouster—a proposition that we cannot agree to. They continued their possession after the lease as before, and, when the defendant, in his mining operations, (under an entirely different lease) crossed the line up to which they claimed, they brought this suit. Under the facts necessarily implied in the verdict of the jury we are clear that they had a right to recover.

As between the parties to the instrument, and their privies, a conveyance of the underlying coal—the grantor retaining the surface—effects severance in title; under our statute the re-

cording of the conveyance takes the place of livery of seisin, and the subsequent possession of the holder of each estate follows his right. But as between the grantee and a third party, who is in the actual, open, adverse, exclusive and peaceable possession of the land at the time, the recording of the instrument is not equivalent to an entry, and—there being no other interruption of his possession—when the full period of twenty-one years from its inception has elapsed his title to the land becomes perfect.

This conclusion renders separate discussion of the several assignments of error unnecessary.

Judgment affirmed.