## Republic Connellsville Coke Co. v. Century Coke Co.

*Deed—Coal—Sale of coal—Severance of surface and minerals—Construction of deed—Evidence—Adverse possession.*

1. A deed of conveyance of a lot of ground in fee contained the following words: "Together with the privilege of digging or mining after coal under all the lands" of the grantor, specifically described, adjoining the lot conveyed. "To have and to hold the said tenement and lot of ground above described (with the privilege of mining for coal), hereditaments and premises hereby granted with the appuraentnces unto the said" grantee, "his heirs and assigns, forever:" *Held*, that the grant of the privilege forever, without limitation, qualification or reservation, of digging or mining after coal under all the grantor's land described was equivalent to a conveyance of the title to the coal in fee.

2. When the intent of a deed is clearly expressed therein, no evidence of extraneous facts or circumstances can be received to alter it. The nature and quantity of the interest conveyed is always to be ascertained by the instrument itself. Conjectural intentions are not to be set up in opposition to express words in a deed.

3. When an owner of land in possession separates the ownership of the surface from that of the underground minerals, he can acquire no title to the minerals under the statute of limitations by his exclusive and continued enjoyment of the surface, nor can his successors in title do so through him.

4. An owner of underground minerals does not lose his right or his possession by any length of non-user; he must be disseised to lose his right, and there can be no disseisin by an act that does not actually take the minerals out of his possession.

Case stated in ejectment. C. P. Fayette Co., Dec. T., 1922, No. 2553.

*Sturgis, Morrow & Sturgis,* for plaintiff; *D. M. Hertzog,* for defendant.

VAN SWEARINGEN, P. J., Feb. 27, 1923.—This action is one of ejectment for the recovery of a small tract of coal land, situate in Brownsville Township, Fayette County. The parties, by their counsel, have agreed upon the facts in a case stated, and have agreed that if the court shall be of opinion that title to the property in dispute is in the plaintiff, then judgment shall be entered in favor of the plaintiff for the premises, otherwise judgment shall be entered for the defendant.

On March 1, 1824, title to 105 acres of land, underlaid with coal, situate in Brownsville Township, was out of the Commonwealth and vested in Joshua Wood in fee simple. On the date mentioned, Wood and his wife, for a consideration of $120, did grant, bargain and sell to Thomas G. Lamb, his heirs and assigns, a part of said tract "known by the name of the Dunlaps Creek Salt Works," described by courses and distances, containing two acres 2 roods and 18.45 perches, "together with the privilege of digging or mining after coal under all the lands of the said Joshua Wood and Leticia, his wife, being and lying between the above described lot of ground and lands of the heirs of Patrick Sullivan, deceased, and bounded by parallel lines touching the most northwardly and southwardly corners of the above described lot of ground, and running north 58° east until they intersect the line of the said heirs of Patrick Sullivan, deceased. . . . To have and to hold the said tenement and lot of ground above described (with the privilege of mining for coal) hereditaments and premises hereby granted with the appurtenances unto the said Thomas G. Lamb, his heirs and assigns forever." The latter description covers the tract of coal land in dispute, which contains, according to recent survey, 6.07 acres.

Later the land and coal mining privileges were sold by the sheriff to Stephen Darlington, and the sheriff's deed poll was acknowledged in open court as follows: "Oct. 23, 1826, comes into court George Craft, Esq., high sheriff

of Fayette County, .and acknowledges his deed poll to Stephen Darlington for 2½ acres of land, be the same more or less, situate in Brownsville Township, on Dunlaps Creek, with the privilege of mining for stone coal under ten acres of land adjoining lands of Joshua Wood and others, on which there is a salt well sunk, a furnace for boiling and making salt, in which there is a salt pan and 12 salt kettles, and also a small stone house erected. Taken as the property of Lamb and Truman at the suit of S. Darlington and sold for $219."

By mesne conveyances, whatever title to the coal in dispute was taken by Thomas G. Lamb under the deed from Joshua Wood of March 1, 1824, if any, became vested and now remains in the plaintiff in this case, the Republic Connellsville Coke Company.

In August, 1824, less than six months after their deed to Lamb,˙ Joshua Wood and wife conveyed the farm of 105 acres to William Searight by deed containing the following exception: "Except two lots of ground sold out of the above described tract by the said Joshua Wood and Leticia, his wife. . . . The second and one other lot sold to Thomas G. Lamb, as appears by deed bearing date March 1, 1824, recorded in Deed Book 'N,' page 248, in which was conveyed a lot of ground, being another part of the above described tract, and known by the name of the Dunlaps Creek Salt Works, containing 2 acres 2 roods and 18.45 perches, together with the privilege of digging or mining after coal under all the lands of the said Joshua Wood and Leticia, his wife, being and lying between the said lot of land and lands of the heirs of Patrick Sullivan, deceased," as already described. William Searight conveyed to Robert Rogers in 1827, excepting the coal privileges as above set forth, and in 1837 Rogers conveyed to James Woods 26 acres and 96.5 perches thereof, "excepting and reserving the privilege heretofore conveyed to Stephen Darlington of digging and mining for coal under that part of the said above mentioned lands lying between said Darlington's lots and other lands of the said James Woods," as above described, "as by reference to said Darlington's deed will more fully appear. . . . Also excepting the right to back the water of Dunlaps Creek on the said above described piece of land should it be deemed necessary for the use of the mills."

By mesne conveyances, some of the earlier of which contained exceptions and reservations of the coal privilege and the right to back the water of Dunlaps Creek mentioned, others of which were but quit-claims, although in some of them the coal privilege was recited, and finally by conveyances, in which no reference to the coal privilege was made, title at least to the land overlying the coal in dispute became vested in 1909 in the defendant, the Century Coke Company, which company and its predecessors in title have been in the peaceable possession of the land overlying the coal since 1900, during which period no coal was mined by anybody, nor were there during said period any open mines in the coal.

The question submitted for the decision of the court is whether the plaintiff has title to the coal mentioned or whether title thereto is in the defendant. The decision of the question rests on the construction to be placed upon the language of the deed of March 1, 1824, from Wood to Lamb. By that deed Wood did grant, bargain and sell to Lamb, his heirs and asisgns, the small lot. of ground in fee, and together therewith, for a consideration *in solido*, did grant, bargain and sell to Lamb, his heirs and assigns, the privilege of digging or mining after coal under *all* the lands of Wood constituting the 6.07-acre tract. "To have and to hold the said tenement and lot of ground above described (with the privilege of mining for coal) hereditaments and

3 D. & C.

premises hereby granted with the appurtenances unto the said Thomas G. Lamb, his heirs and assigns, forever." Did this deed convey a corporeal or an incorporeal hereditament? In other words, did the deed constitute a sale of the coal in place, thereby creating a separate estate from the estate in the overlying surface?

We are of opinion that the conveyance was of a corporeal hereditament, and that Lamb took title to the coal in fee. Wood sold for a valuable consideration, which was paid in full. He reserved no interest in the coal, and there is nothing in the deed from which any reservation can be implied. The grant was limited to no time, or quantity, or purpose, or person. It was to be held by Lamb, his heirs and assigns, *forever*. It was of coal under *all* the land specifically described. The will of the grantee was the measure of the grant. The grantee might have put a miner to work on every available foot of the coal; he was invested with complete dominion over it. With certain exceptions not applicable here, a general power of disposal without liability to account is equivalent to ownership itself, it being the highest attribute of ownership, and a grant of the one necessarily carries with it the other. An exclusive right to take the coal from under all the land is a sale of the coal itself; deeds are to be taken most strongly against the grantor. There are two methods by which the subject-matter of a deed may be described, each equally potential with the other. The one is by a description of the thing itself, as of land by metes and bounds, or by a known name, and the other is by a designation of its usufruct, or of dominion over it. If in another form of words Wood had described the coal as the subject of the grant, Lamb would have possessed no greater beneficial rights than were given to him by the words adopted. The words employed by Wood in the deed express absolute dominion over and complete enjoyment of the property. The right conveyed, whatever it was, was one for which all the consideration that ever could accrue to Wood was paid. When a grant in terms or in effect is a grant of all the coal in the grantor's land, it amounts to a severance of the coal from the surface, and vests title to the underlying stratum in the grantee. With us the delivery and record of the deed stand in lieu of livery of seisin under the old English law: Caldwell *v.* Fulton, 31 Pa. 475; Fairchild *v.* Dunbar Furnace Co., 128 Pa. 485; Plummer *v.* Hillside Coal and Iron Co., 160 Pa. 483; Benson *v.* The Miners' Bank, 20 Pa. 370; and the same is true whether the instrument under consideration be denominated a deed, an agreement or a lease, if it shows that a sale of the coal was intended by the parties, and a right to mine and remove all the coal is conferred by it in express terms or by plain and necessary implication, notwithstanding a term be created within which the coal is to be taken out, or that the purchase money stipulated for is in a lump sum or is a certain price for every ton mined and is called rent or royalty, provided the intention to sell the coal is manifest: Finnegan *v.* Stineman, 5 Pa. Superior Ct. 124, and authorities there cited by Judge Rice.

In Caldwell *v.* Fulton, 31 Pa. 475, in speaking of the cases cited there, in an attempt to sustain the doctrine that a conveyance of a right to dig, take and carry away the coal or minerals in a tract of land, though the grant be unlimited in quantity, time or purpose for which the minerals may be taken, conveys no interest in the coal or minerals until they are taken, and passes only an incorporeal hereditament, it was said by Mr. Justice Strong: "None of them were decided upon the ground of any supposed distinction between a right to take all the coal and carry it away and a right to the coal itself. They are all cases in which there was no unrestricted power of taking and

disposition conferred upon the grantee. The coal, or minerals, was to be taken either for a limited purpose or in restricted quantities, and generally was not to be paid for until taken. And in most of them it is easy to see that the supposed necessity of livery of seisin, in order to pass a corporeal interest in land, was a controlling consideration in the minds of the judges. The impossibility of making livery is, however, in Pennsylvania, no reason for refusing to give a construction to a deed accordant with the intention of the parties. When the intent is to give the entire usufruct and power of disposal, the legal title must be held to pass."

The cases cited by counsel for the defendant in the present case are similar in character to those mentioned by Mr. Justice Strong in his statement last above quoted. The question in every such instance, of course, regardless of the name by which the writing may be designated or the form of its provisions, is, was it the intention thereby to pass title in fee to the property therein mentioned. In Clement *v.* Youngman, 40 Pa. 341, the right and privilege to take the iron ore, limestone and timber was restricted as to quantities, that is, "sufficient to enable said mines to be worked to advantage;" there was a nominal consideration of $1 named in the grant, and additional payments were to be made as the materials were taken, and there were other characteristics connected with the grant which were inconsistent with the idea of an intention to transfer ownership of the materials in place to the grantee. In Algonquin Coal Co. *v.* Northern Coal and Iron Co., 162 Pa. 114, there was a limitation as to the purpose of the reservation, the grantor reserving for himself, his heirs and assigns, "a free toleration of getting coal for their own use without hinderance or denial," and the grantee was held to take title in fee, subject to that limitation. In Gloninger *v.* Franklin Coal Co., 55 Pa. 9, the right to dig and carry away coal was restricted by the terms of the grant to a specified coal-bed. In Carnahan *v.* Brown, 60 Pa. 23, the language of the devise was so restricted as to show no exclusive privilege, and passed but an incorporeal hereditament. In Jennings Bros. & Co. *v.* Beale, 158 Pa. 283, the grant provided for the payment of a royalty on coal when and as mined, and the conveyance showed it was not the intention of the parties to convey the coal absolutely. Union Petroleum Co. *v.* Bliven Petroleum Co., 72 Pa. 173, was the case of an oil lease, and is not authority here. In Johnstown Iron Co. *v.* Cambria Iron Co., 32 Pa. 241, there was a grant of a privilege of raising iron ore on the lands of the grantor at a certain price per ton, of which Mr. Justice Woodward said: "It was not a sale of all the ore, notwithstanding the stipulation that the privilege was to be given to none else, because it was to be paid for by the ton, and, of course, no more was sold than should be raised." In Finnegan *v.* Stineman, 5 Pa. Superior Ct. 124, the question was whether the mere recording of a conveyance of the coal stopped the running of the statute of limitations in favor of one in the actual adverse and exclusive possession of the land under color of title at the time the conveyance was made. These are all the cases cited by counsel for defendant.

Defendant's counsel calls particular attention to the language of Lord Ellenborough in Chetham *v.* Williamson, 4 East, 469, 476, as quoted by the court in Johnstown Iron Co. *v.* Cambria Iron Co., 32 Pa. 241, to the effect that "no case can be named where one who has only a liberty of digging for coals on another's soil has an exclusive right to the coals, so as to enable him to maintain trover against the owner of the estate for coals raised by him," counsel stating in his brief: "This language is adopted by the court in the last cited case, and thus made part of the law of this State. It is so particularly

applicable to the words of the grant in the deed now under consideration as makes it conclusive, in our view of the case, that nothing more was granted by that deed than an incorporeal hereditament." But in the case of Clement v. Youngman, 40 Pa. 341, Mr. Justice Strong, after referring to the language of Lord Ellenborough and commenting briefly thereon, said: "However this may be, it is hard to give any reason for holding that a deed which confers upon the grantee every right over its subject which an owner can exercise does not confer ownership. If, therefore, this were all that is to be found in the deed under which the plaintiffs claim, their case would be ruled in their favor by Caldwell v. Fulton." In the much later case of Plummer v. Hillside Coal and Iron Co., 160 Pa. 483 (1894), it was said explicitly by Mr. Justice Williams: "A written contract, though not under seal, granting the privilege of digging all the coal or ore on the vendor's land, is equivalent to a conveyance of the title to the coal or ore in fee." In the very early case of Benson v. The Miners' Bank, 20 Pa. 370 (1853), there was a deed for a tract of land particularly described, but with a clause in these words, "excepting and forever reserving the liberties and privileges for the heirs and legal representatives of Samuel Potts, deceased (of whom the grantor was one), to dig, take and haul away all the stone coal that is or may hereafter be found on the above described tract of land," and it was said by Mr. Justice Woodward: "By the plain words of this deed, all the coal being expressly reserved and excepted out of the grant, the instrument cannot be so construed as to pass any part of it to the grantee without subverting every rule of interpretation found in the books." And see, also, Hannum v. West Chester, 70 Pa. 367. In Caldwell v. Fulton, 31 Pa. 475, the court referred to the case of Chetham v. Williamson, 4 East, 469, in which the above quoted language of Lord Ellenborough was used, and Mr. Justice Strong said: "Lord Ellenborough confined his attention to the question whether the grant was exclusive. The differences between the case and the present one are sufficiently obvious. It is one very material distinction that in Chetham v. Williamson the right to take coal or minerals was not a thing for which the consideration mentioned in the deed was given. They were to be paid for when taken. In a deed of bargain and sale it is the payment of the consideration which transfers the use, and with it the legal title. The case is also illustrative of the fetters which the doctrine of livery of seisin has imposed upon the construction of deeds."

When the intent of a deed is clearly expressed therein, no evidence of extraneous facts or circumstances can be received to alter it. The nature and quantity of the interest conveyed is always to be ascertained by the instrument itself. Conjectural intentions are not to be set up in opposition to express words in a deed. The inquiry in this case is, what dominion or ownership in the coal was granted by Wood to Lamb in 1824; and that must be determined exclusively from the words which Wood employed: Caldwell v. Fulton, 31 Pa. 475; Hines v. Union Connellsville Coke Co., 271 Pa. 219. We hold that the deed from Wood to Lamb, granting the privilege forever, without limitation, qualification or reservation, of digging or mining after coal under all the grantor's land described therein, was equivalent to a conveyance of the title to the coal in fee. The deed operated to sever the surface from the underlying stratum of coal. The grantor then was in possession of the surface overlying the coal, and thereafter the continued occupancy of the surface by the grantor and his successors in title thereto was not hostile to the title of the owner of the underlying estate, and could not give title under the statute of limitations. Wood's deed to Lamb conveyed to Lamb the absolute ownership of the coal and effected a severance of the right

to the surface from the right to the underlying coal. It made them distinct corporeal hereditaments. Each became a distinct possession. The possession of the surface became as distinct from the possession of the coal as is the possession of one tract of land from that of another not in contact with it. When an owner of land in possession separates the ownership of the surface from that of the underground minerals, he can acquire no title to the minerals under the statute of limitations by his exclusive and continued enjoyment of the surface, nor can his successors in title do so through him. Nor does the owner of the minerals lose his right or his possession by any length of non-user; he must be disseised to lose his right, and there can be no disseisin by an act that does not actually take the minerals out of his possession: Plummer *v.* Hillside Coal and Iron Co., 160 Pa. 483; Armstrong *v.* Caldwell, 53 Pa. 284; Caldwell *v.* Copeland, 37 Pa. 427; Finnegan *v.* Stineman, 5 Pa. Superior Ct. 124. To affect the title of the present plaintiff to the coal in dispute there must have been an entry upon the estate of the plaintiff or its predecessors in title, and an adverse possession thereof, which, as shown by the case stated, never occurred.

And now, Feb. 27, 1923, by authority of the agreement of the parties, and for the reasons set forth in the opinion herewith filed, judgment is entered in favor of the plaintiff for the premises described in the introductory paragraph of the case stated.

From Luke H. Frasher, Uniontown, Pa.