## Plummer, Appellant, *v.* Hillside Coal & Iron Co. et al.

160    483
162    118
160    483
170     39
160    483
173    549
160    483
183     70
160    483
209    ³135

*Lease—Coal lease—Sale of coal.*

A written contract, though not under seal, granting the privilege of digging all the coal or ore on the vendor's land, is equivalent to a conveyance of the title to the coal or ore in fee.

An instrument in writing provided as follows : " Samuel Callender doth lease and to farm let to Thomas Meredith all the land that he now holds and the lease is to continue for the term of one hundred years from this day. Possession of the leased premises shall extend only to their use as a coal field. The lessee shall have full power and possession to search for coal anywhere on the leased premises, in any manner he may think proper, to raise the coal, when found, from the beds ; to enter and carry away coal ; and to sell the same for his own benefit and profit. He may occupy whatever land may be useful or necessary as coal yards ; if necessary for securing the full enjoyment of the premises as a coal field, then the said Samuel covenants and agrees to execute such further writings as counsel learned in the law may deem proper." The purchase money or price of the coal was fixed at two hundred dollars. If the coal proved abundant and of a given thickness then another hundred dollars was to be paid. In addition to this the sum of one dollar per annum was to be paid as a rent. *Held*, that the instrument contemplated a sale of the coal under the leased premises at a fixed price, to be increased one hundred dollars if the quantity of coal reached the proportions described in it.

*Statute of limitations—Severance of mineral from surface—Adverse possession.*

Where there has been a severance in title of the surface from the underlying stratum of coal, the continued occupancy of the surface by the vendor is not hostile to the title of the owner of the underlying estate, and will not give title under the statute of limitations. To affect the title of the owner of the coal there must be an entry upon his estate and an adverse possession of it.

*Oil leases and coal leases distinguished.*

The rights of lessors and lessees under oil leases are distinguished from the rights of lessors and lessees under coal leases, by reason of the difference in the nature of the two minerals and the manner of their production.

Argued Feb. 21, 1894. Appeal, No. 263, Jan. T., 1894, by plaintiff, Emma A. Plummer, from judgment of C. P. Lackawanna Co., Sept. T., 1890, No. 386, on verdict for defendants. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass quare clausum fregit for entering plaintiff's land and taking coal therefrom. Before GUNSTER, J.

At the trial it appeared that, in 1804, Edward London took out a warrant for a tract of land on the Lackawanna river which included the land in controversy in this case. He went into possession of it, and remained in possession until his death. The land in dispute came into possession of Samuel Callender, a son-in-law of London, who, in 1828, executed the following instrument in writing, signed and sealed by the parties:

" This agreement made Oct. 1, 1828, between Samuel Callender, Jr., of the township of Blakely, in the county of Luzerne and state of Pennsylvania, of the one part, and Thomas Meredith, of Belmont, in the county of Wayne and state aforesaid, of the other part, witnesseth, that the said Samuel doth lease and to farm let unto the said Thomas all the land that he now holds or is possessed of either by deed, article of agreement, or by any other title, in said township of Blakely, county and state aforesaid, except one hundred acres of land, which the said Samuel purchased of William Woodbridge, by article of agreement, about one hundred acres. The said land leased to said Thomas contains one hundred and thirty acres or thereabouts, and the lease is to continue for the term of one hundred years from this day. It being, however, clearly understood that the possession which the said Thomas acquires under this lease shall extend only to the use of the leased premises as a coal field, that is to say, the said Thomas shall have full right, power and possession to search for coal anywhere on the leased premises in any manner he may think proper, to raise the coal when found from the beds, at all times to enter and carry away the coal in wagons, sleds or other vehicles, and to sell the same for his own benefit and profit, and also that he shall have a right to occupy whatever land may be useful or necessary as coal yards ; these rights and privileges shall extend to the heirs, executors, administrators and assigns of the said Thomas during the term aforesaid, and also to his and their agents, engineers, laborers and workmen. It is also understood that in case it shall be either useful or necessary to make roads of any description through the leased premises for the purpose of transporting the coal to market, it may be done, taking care to do the

least possible damage to the land or the improvements, and in case it may prove necessary for securing the full enjoyment of the premises aforesaid as a coal field as aforesaid, then the said Samuel covenants and agrees to execute such further writings as counsel learned in the law may deem proper, at the expense of said Thomas, his executors, administrators or assigns. And the said Thomas, for himself, his heirs, executors, administrators and assigns, covenants, promises and agrees to pay to the said Samuel on the first day of August next the sum of two hundred dollars, in manner following : So much money as may remain due for principal and interest on a contract for land, entered into by the said Samuel with the heirs of Samuel Meredith, deceased, on which he now resides, in said township of Blakely, the residue in cash, and also an annual rent of one dollar, payable on the first day of October in each and every year. And in case the coal on the leased premises shall prove extensive and abundant, and of an average thickness of ten feet, then the said Thomas, on these facts being satisfactorily proved, agrees to pay to the said Samuel the further sum of one hundred dollars. It is also agreed that the said Samuel or his heirs, so long as they shall reside on the leased premises, shall have a right to dig whatever coal they may want for their own use, but not to sell, so as not to interfere with the works of said lessees.

" Provided always, nevertheless, that the said Thomas, his heirs, executors, or administrators, by indorsing forty dollars on the contract aforesaid made by the said Samuel with the heirs of Samuel Meredith, deceased, at any time previous to the first day of August next, shall have full right and authority to declare this agreement and lease absolutely null and void, anything in this instrument of writing to the contrary notwithstanding. For the true and faithful performance of the covenants in this agreement and lease, the parties within named bind themselves, their heirs, executors and administrators, each to the other, firmly by these presents."

Plaintiff claimed title, by sundry conveyances, from the heirs of Samuel Callender. Defendants claimed title to the coal under the agreement between Samuel Callender and Thomas Meredith.

Plaintiff proposed to prove by Stephen Callender that he has

lived on or near the property known as the Callender land, upon which the trespasses in this case are alleged to have been committed, since 1819; that no person has mined any coal from said land except Samuel Callender and his heirs, and no attempt has been made to mine coal under said land until the Lackawanna Coal Company, Limited, one of the defendants, came into the coal from an adjoining tract, about two years and a half ago.

Defendants objected to the offer as immaterial, irrelevant and incompetent; that no time was fixed in the lease when Thomas Meredith, or his assigns, would take possession of the coal field, and they, therefore, had the full term of the lease, to wit, a hundred years from Oct. 1, 1828, to enter and take possession thereof. The offer does not propose to show that Samuel Callender, or his heirs, had any other possession of the coal except such as they were authorized to have by the lease, to wit, that the said Samuel, and his heirs, may dig what coal they may need for their own use, but not to sell; and it is not proposed to prove by the offer that they exceeded the authority given them by the lease; their possession, therefore, of the surface, and any occupancy they may have had of the coal, was in subservience to the lease and not in opposition to the same, and no possession of the surface by said Samuel, or his heirs, could, by any reasonable construction, be construed as in opposition to the rights of Thomas Meredith, or his assigns, to the coal underlying, which had been severed by the lease of 1828, which was duly recorded, and which was notice to all the world of such severance.

By the Court: I do not quite understand the purpose of the offer.

By Mr. Price: The purpose of the offer is to show that the lessee did not take possession of the land and search for coal in accordance with the terms of the lease. The lessee also had the right to take possession of the surface, and that he did not take possession of the surface; there were surface rights as well as coal, and if he abandoned one he abandoned the other. We will follow this by showing that there was an increased value of this land; we will show that this land is worth as much as ten to one hundred times as much as it was when this contract was made. One of the purposes of the offer is to show

that they did not take possession in accordance with the terms of the lease, and determine and investigate how much coal there was and pay the hundred dollars. They have failed for sixty years to pay the additional hundred dollars; they admit that they ought to have done it; they have failed for forty years, under their own admissions, to pay the annual rental.

By the Court: As I view the case at present, this evidence is irrelevant, and the objections to the offer are sustained. Exception. [11]

Plaintiff's points were among others as follows:

1. Request for binding instruction. Refused. [2]

" 2. The failure of the grantees of Thomas Meredith to pay the rent stipulated in the agreement and lease between Thomas Meredith and Samuel Callender, from 1849 to 1890, is conclusive evidence of the abandonment of the interest in the coal acquired under such agreement, and the verdict of the jury must be for the plaintiff for the value of the coal, which it is admitted is six dollars." Refused. [3]

" 5. Those claiming under Thomas Meredith were in default in not paying the rent from 1849 to 1890, and the statute of limitations in 1890 had concluded all rights under the Callender and Meredith lease. *Answer :* I decline to affirm that proposition. I do not think this agreement of 1828 can be concluded by the statute of limitations. The right of Samuel Callender, and those under him, to collect the rent may be concluded by the statute of limitations, but the grant of the coal cannot be concluded in that way." [4]

" 9. The failure of Thomas Meredith and his grantees to ascertain that the coal was ten feet thick and pay the additional one hundred dollars purchase money, and to pay annual rental from 1849 to 1890, is evidence from which the jury may infer an abandonment of the Callender and Meredith lease, and all rights acquired thereunder." Refused. [5]

Defendants' points were among others as follows:

1. Request for binding instruction. Affirmed. [1]

" 6. That the lease of Samuel Callender of October 1, 1828, gave to Thomas Meredith, and his heirs and assigns, the right and title to all the coal under any land then held by said Samuel Callender, in the township of Blakely, by any title whatever, except the Woodbridge tract, for the term of one hundred

years from that date.  *Answer:*  I affirm this proposition, with the qualification that it gave them title whenever it was discovered within the hundred years.   This agreement of 1828 is, to some extent, a permission to go on the land and search for the coal.   If Thomas Meredith had undertaken any search in his lifetime, or those claiming under him, and had satisfied themselves that there was no coal there, and then expressed themselves as satisfied with it, and left it, then it might have been an abandonment of their right under it.   But there is not a particle of evidence in the case that Thomas Meredith, or any one under him, made any effort to find any coal, or to remove any, until after this suit was brought, and they have a right, under the instrument of 1828, to wait.   They may have known that there was coal there, they may have supposed that there was coal there ; but that is not enough, gentlemen of the jury. They had the right to wait.   It may have become more valuable with time.   They were not required to move a ton of coal out of there.   There was nothing in the lease calling for any payment for any coal that was removed, except the considerations which were set forth in the agreement—that is, the two hundred dollars down, then the annual rent, then the amount which was to be paid in case the coal proved to be extensive and of the average thickness of ten feet." [6]

" 7. That no time being specified in said leases when the grantees should take possession, they may take actual possession at any time during the term.  *Answer:*  I affirm that proposition.   You will remember that these leases run for the term of one hundred years from the date.   There is nothing whatever in the leases requiring or indicating that Thomas Meredith, or those under him, were to take actual possession at any time prior to the expiration of the hundred years.   Of course, when the hundred years were up, then their rights ended, and they will end unless they acquire more than they have got now." [7]

" 8. That there can be no forfeiture of the lease for nonpayment of the rent, as there is no clause authorizing a forfeiture.  *Answer:*  I affirm that proposition.   Ordinarily, before there can be a forfeiture of a lease, there must be a clause in the lease authorizing such forfeiture ; and then, also, as a rule, there must be a demand for the rent.   There is no clause of

forfeiture in this lease; there is no evidence that any rent was ever demanded by anybody. Of course, the obligation to pay the rent existed, there is no doubt about that, but there could be no forfeiture of this lease, because there is no clause authorizing it in the agreement." [8]

" 9. There can be no abandonment claimed, because abandonment is only predicable of an inchoate title, not of a perfected estate." Affirmed. [9]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were, among others, (1–9) instructions; (11) ruling on evidence, quoting instructions and bill of exceptions.

*Samuel B. Price* and *H. M. Hannah, Alexander Farnham* with them, for appellant.—The Callender lease conveyed only a right to search for coal: Bainbridge on Mines, 1st Am. ed. 237, 238; Venture Oil Co. v. Fretts, 152 Pa. 451; McNish v. Stone, 152 Pa. 457; Duffield v. Hue, 129 Pa. 94; Duffield v. Rosenzweig, 144 Pa. 520; Caldwell v. Fulton, 31 Pa. 475; Kingsley v. Coal & Iron Co., 144 Pa. 613; Lazarus's Est., 145 Pa. 1.

Defendants are barred by the statute of limitations: Ross v. Pleasants, 3 Pa. 408; Trickett on Limitations, 71; Butz v. Ihrie, 1 Rawle, 221; Nitzell v. Paschall, 3 Rawle, 76; Bombaugh v. Miller, 82 Pa. 209; Price on Limitations and Liens, 1st ed. 118; Yeakle v. Nace, 2 Whart. 122.

The interest in the Callender lease was abandoned: Kreutz v. McKnight, 53 Pa. 319; Jackson v. Gross, L. & T. 217, § 359; McKinney v. Reader, 7 Watts, 123; Greider's Ap., 5 Pa. 422; Kiester v. Miller, 25 Pa. 48; Colt v. Selden, 5 Watts, 525; Spalding v. Hedges, 2 Pa. 240; Washb. R. Prop. 60; Corning v. Gould, 16 Wend. 543; Raffensberger v. Cullison, 28 Pa. 426; Auer v. Penn, 92 Pa. 444; Boyce v. M'Culloch, 3 W. & S. 429; Grove v. Donaldson, 15 Pa. 128; Packer v. Noble, 103 Pa. 225; Brownfield's Exrs. v. Brownfield, 151 Pa. 567; Putnam v. Tyler, 117 Pa. 584; Bunting v. Young, 5 W. & S. 196; Mayor of Phila. v. Riddle, 25 Pa. 259; 1 Addison on Contracts, 3d Am. ed., 1399, §§ 30, 31; Venture Oil Co. v. Fretts, 152 Pa. 451; Read v. Goodyear, 17 S. & R. 350,

Strimpfler v. Roberts, 18 Pa. 299; Richards v. Elwell, 48 Pa. 361.

The agreement was forfeited for non-compliance with its terms: Bainbridge on Mines, 199; 1 Bouvier's Law Dic., title "Forfeiture."

Defendants' title is void for laches: 12 A. & E. Ency. L. 607; Clarke v. Hart, 6 H. L. Cas. 633; Pratt v. California Min. Co., 24 Fed. R. 869; Castner v. Walrod, 83 Ill. 171; McGrew v. Foster, 113 Pa. 642; Patterson v. Martz, 8 Watts, 374; Russell v. Baughman, 94 Pa. 400.

The court should have directed a verdict for plaintiff, because the defendants failed to establish any title in the land in dispute: Bigelow v. Lehr, 4 Watts, 377; 1 Chit. Pl., 14 Am. ed. 167-177.

*W. H. Jessup, W. H. Jessup, Jr., Horace Hand* and *Willard, Warren & Knapp* with him, for appellees.—When a fair interpretation of a written agreement shows that a sale was intended by the parties and a right to mine and remove all the coal is conferred by it in express terms, or by plain and necessary implication, it will constitute a sale notwithstanding a term is, created within which the coal is to be taken out: Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Hope's Ap., 29 W. N. 365; Montooth v. Gamble, 123 Pa. 240; R. R. v. Sanderson, 109 Pa. 583; Sanderson v. Scranton, 105 Pa. 469; Harlan v. Lehigh Coal & Nav. Co., 35 Pa. 287; Lazarus's Est., 145 Pa. 1; Fairchild v. Dunbar Furnace Co., 128 Pa. 485; Lillibridge v. Coal Co., 143 Pa. 293; Caldwell v. Fulton, 31 Pa. 475; Caldwell v. Copeland, 37 Pa. 427; Scranton v. Phillips, 94 Pa. 15; Timlin v. Brown, 158 Pa. 606.

To gain title by the statute of limitations there must be for the statutory period: (1) An actual possession of the land claimed. (2) Such possession must be notorious. (3) It must be continuous for twenty-one years. (4) It must be adverse: Caldwell v. Copeland, 37 Pa. 430; Sanderson v. Scranton, 105 Pa. 469; Armstrong v. Caldwell, 53 Pa. 284.

There was no abandonment. Abandonment is the relinquishment or surrender of rights of property by one person to another: Bouvier's Law Dict.; 1 A. & E. Ency. L. 12; Tiedeman, Real Prop., § 739; Putnam v. Tyler, 117 Pa. 570; Mayor of

Phila. v. Riddle, 25 Pa. 259; Armstrong v. Caldwell, 53 Pa. 287; Seaman v. Vawdrey, 16 Ves. 390; Smith v. Lloyd, 9 Exch. 562.

There could be no question of forfeiture for nonpayment of rent. (1) Because there was no demand for rent; (2) because the deed contained no forfeiture: 12 A. & E. Ency. L. 578; Brown v. Bragg, 22 Ind. 122.

There has been no laches.

OPINION BY MR. JUSTICE WILLIAMS, March 26, 1894:

The learned counsel for the appellant states the point in controversy very fairly and clearly in the opening sentence of his printed argument. He says: "The contention in this case is confined to the effect and subsequent history of the Callender lease, dated the first of October, 1828." His position is that the lease granted only an incorporeal right to the lessee, to be exercised upon the premises covered by the lease. The appellees, on the other hand, contend that it granted the coal in place, under the land, absolutely. The words of the instrument upon which this question depends may be put together thus: "Samuel Callender . . . . doth lease and to farm let to Thomas Meredith . . . . all the land that he now holds . . . . and the lease is to continue for the term of one hundred years from this day. Possession of the leased premises shall extend only to their use as a coal field. The lessee shall have full power and possession to search for coal anywhere on the leased premises, in any manner he may think proper, to raise the coal, when found, from the beds; to enter and carry away coal; and to sell the same for his own benefit and profit. He may occupy whatever land may be useful or necessary as coal yards . . . . for roads for transporting the coal; and in case it may prove necessary for securing the full enjoyment of the premises aforesaid as a coal field as aforesaid, then the said Samuel covenants and agrees to execute such further writings as counsel learned in the law may deem proper." The purchase money or price of the coal is fixed at two hundred dollars. If the coal proved abundant and of a given thickness then another hundred dollars was to be paid. In addition to this the sum of one dollar per annum was to be paid as rent. The lessor reserved out of this grant the right for himself and his heirs to take coal for their own use so long as they should reside on the land.

This instrument contemplates a sale of the coal under the leased premises at a fixed price, to be increased one hundred dollars if the quantity of coal reached the proportions described in it. The right of removal was to be exercised within one hundred years. The fact that the instrument is in the form of a lease is not material when the character of the transaction is apparent: Kingsley et al. v. Hillside Coal & Iron Company, 144 Pa. 613 ; Montooth v. Gamble, 123 Pa. 240. A written contract, though not under seal, granting the privilege of digging all the coal or ore on the vendor's land, is equivalent to a conveyance of the title to the coal or ore in fee : Fairchild v. Furnace Company, 128 Pa. 485. Such a conveyance operates to sever the surface from the underlying stratum of coal ; and after such severance the continued occupancy of the surface by the vendor is not hostile to the title of the owner of the underlying estate, and will not give title under the statute of limitations. To affect the title of the owner of the coal there must be an entry upon his estate, and an adverse possession of it : Armstrong v. Caldwell, 53 Pa. 284.

But the contention that a right to mine coal in the land of another is an incorporeal one cannot be successfully maintained. The grant of such a right is a grant of an interest in land : Hope's Appeal, 33 Pitts. L. J. 270. When the grant is in terms or in effect a grant of all the coal on the lessor's land, this amounts to a severance of the coal from the surface, and vests a title to the underlying stratum in the grantee : Sanderson v. The City, 105 Pa. 469. This underlying estate may be conveyed under the same general rules as to notice, as to recording, and as to actual possession, as the surface. After such a severance, the possession of the holder of each estate is referable to his title. The owner of the surface can no more extend the effect of his possession of his own estate downward, than the owner of the coal stratum can extend his possession upward, so as to give him title to the surface under the statute of limitations. The owner of the surface can be affected only by the invasion of the surface. The owner of the underlying stratum is not bound to take notice of the invasion of the estates that do not belong to him ; but when his own estate is invaded he is bound to take notice. The conclusion thus reached disposes of the title by possession set up by the plaintiffs, and of their right to recover in this case.

The appellant cites the Venture Oil Company v. Fretts, 152 Pa. 451; McNish v. Stone, 152 Pa. 457, and other cases in which oil leases were considered and the rights of the lessors and lessees defined. A lease granting to the lessee the right to explore for oil and, in case oil is found in paying quantities on the leased premises, to drill wells and raise the oil, paying an agreed royalty therefor, has been held to convey no interest in the land beyond the right to enter and explore, unless the search for oil proves successful. If it proves unsuccessful and the lessee abandons its future prosecution, his rights under the lease are gone. So it might be with a similar lease of lands supposed to contain coal. If the lessee entered, explored the leased premises, and, finding nothing, gave up the search, he would no doubt be held to the same rules, upon the same provisions in the lease, as were applied in the cases cited. The difference in the nature of the two minerals, and the manner of their production, has however resulted in considerable differences in the forms of the contracts or leases made use of. When oil is discovered in any given region, the development of the region becomes immediately necessary. The fugitive character of oil and gas, and the fact that a single well may drain a considerable territory and bring to the surface oil that when in place in the sand-rock was under the lands of adjoining owners, makes it important for each landowner to test his own land as speedily as possible. Such leases generally require, for this reason, that operations should begin within a fixed number of days or months, and be prosecuted to a successful end or to abandonment. Coal on the other hand is fixed in location. The owner may mine when he pleases regardless of operations around him. Its amount and probable value can be calculated with a fair degree of business certainty. There is no necessity for haste, nor moving pari passu with adjoining owners. The consequence is that coal leases are for a certain fixed term, or for all the coal upon the land leased, as the case may be. The rule of Venture Oil Co. v. Fretts, supra, is not capable of application to the lease made by Callender to Meredith in 1828 for several reasons: (1) The Callender lease is in effect a sale of all the coal in the leased premises, and consequently a severance of the surface therefrom. (2) It is for one hundred years. All idea of haste in development or operating is excluded by the terms of the instrument,

and the time for commencing the work of mining is left to the discretion of the lessee. (3) The consideration of the grant was not the development of the mineral value of the land, but the price fixed by the agreement and actually paid to the lessor in money.

Upon a careful examination of the several assignments of error we are all of opinion that the judgment must be affirmed.

Judgment will be entered accordingly.