## Algonquin Coal Co., Appellant, *v.* Northern Coal & Iron Company.

*Deed—Reservation—Separation of surface from minerals.*

In 1801, Thomas Wright executed a deed for land underlaid with coal. The deed contained the following clause: " The said Thomas reserves for himself, his heirs and assignees, a free toleration of getting coal for their own use without hindrance or denial." *Held*, that the grantee in the deed took title to the coal subject to the privilege in the grantor, his heirs and assignees, of supplying their personal needs for fuel from the coal granted by the deed.

*Adverse possession—Separation of surface and mineral.*

Until a severance takes place between the surface and an underlying estate, the owner's title reaches from the center to the surface, and from the surface to the heavens; and with a grant of the land or an acquisition of title by an adverse holding the entire estate of the former owner passes. When a severance takes place and the holder of a stratum of coal or other mineral records his title or enters into possession of his subsurface estate, he is not affected by the state of the title to, or the possession of, the surface.

Argued April 12, 1894. Appeal, No. 485, Jan. T., 1894, by plaintiff, from judgment of C. P. Luzerne Co., March T., 1894, No. 299, in favor of defendant, in case tried by the court without a jury. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Amicable action in trespass. Before RICE, P. J.

The case was tried without a jury under the act of April 22, 1874. The material facts appear by the opinion of the Supreme Court.

Plaintiff's point was among others as follows:

"1. Under the exception and reservation as to the coal contained in the deed from Thomas Wright to Henry Courtwright, the exclusive ownership of the coal under the land therein described was vested in Thomas Wright." Refused. [1]

Judgment was entered for defendant. Plaintiff appealed.

*Errors assigned* were, among others, (1) rejection of point, quoting it; (13) in not entering judgment for plaintiff for value of coal mined.

*F. C. Sturges* and *Alexander Farnham, W. P. Ryman* with him, for appellant.—The effect of the exception and reservation of the coal contained in the deed from Thomas Wright to Henry Courtright was to sever the ownership of the coal strata from that of the rest of the land, leaving the ownership of the coal remaining vested as before in Thomas Wright: Caldwell v. Fulton, 31 Pa. 475; Lillibridge v. Coal Co., 143 Pa. 306; Whitaker v. Brown, 46 Pa. 197; Stockbridge Iron Co. v. Iron Co., 107 Mass. 290; Dark v. Johnson, 55 Pa. 171.

The doctrine of the cases is this, that where the mineral is to be paid for by royalty and the grantee has not entered into any covenants to remove the minerals, then the right conveyed is incorporeal; but where the consideration is a lump sum and is paid and the right to mine is unlimited, then a fee passes: Lord Mountjoy's Case, Coke's Lit. 104; Chetham v. Williamson, 4 East, 469; Dow v. Wrighte, 2 B. & Ald. 719; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Jennings v. Beale, 158 Pa. 283; Clement v. Youngman, 40 Pa. 342; Gloninger v. Coal Co., 55 Pa. 9; Grubb v. Guilford, 4 W. 223; Smith v. Kemp, 2 Salk. 637; Kirkham v. Sharp, 1 Whart. 335.

*George R. Bedford, Andrew H. McClintock* and *Asa R. Brundage* with him, for appellee.—The language of the reservation plainly imports an incorporeal hereditament: Gloninger v. Coal Co., 55 Pa. 12; Whitaker v. Brown, 46 Pa. 197.

The distinction between "reserving coal" and "reserving a free toleration of getting coal," is quite obvious to the average mind, and such were the minds which made this contract. The former plainly imports an intended exception of the corpus,

the latter an intended reservation of a mere privilege concerning the same. Intention and technicality concur.

The words " for their own use," taken alone, or in connection with the plain grant or reservation of a corporeal interest, would have no more significance, perhaps, than they have in the usual habendum of a deed, but read in connection with the other words contained in this reservation, are plainly suggestive of an intention not to except the whole body of coal, but simply to reserve a right of taking coal for personal requirements.

Caldwell v. Fulton, 31 Pa. 475, is plaintiff's main stay, but the grant in that case was " the full right, title and privilege of digging and taking away to any extent."

In Jennings v. Beale, 158 Pa. 283, on the other hand, the grant was " the perpetual right to mine, dig, and carry away coal, in and from all the veins," etc., and this was held to be an incorporeal interest, not exclusive, because " all " the coal was not thereby conveyed.

In Gloninger v. Coal Co. a lump sum was paid in full for the right, which nevertheless was held an incorporeal hereditament ; and in Union Pet. Co. v. Bliven Pet. Co., 72 Pa. 181, it was said : " The fact that $150 was in this case paid down in cash does not change the character of the grant."

OPINION BY MR. JUSTICE WILLIAMS, May 31, 1894 :

The plaintiff does not claim to own the surface of the land covered by the description filed in this case, but does claim to be the owner of the coal below the surface. This action is brought therefore to recover for an alleged invasion of the underlying estate which the plaintiff says was severed from the surface in 1801, and has continued to belong to its grantors down to the time of the lease or conveyance to itself. The facts found by the learned trial judge show that prior to 1801 the surface and the subsurface were owned by Thomas Wright. In that year he sold the land to Henry Courtright and made a conveyance therefor in the usual form, in which he incorporated the following clause : " The said Thomas reserves for himself, his heirs and assignees, a free toleration of getting coal for their own use without hindrance or denial."

The plaintiff contends that these words amount to a reservation of all the coal under the land conveyed, and, as the as-

signee or holder of Wright's title, claims an absolute and exclusive right to mine all the coal. The defendant claims under one Myers who acquired Courtright's title by an adverse possession, and insists that if any right to take coal from the land survives in Wright or his grantees it is an incorporeal one, to be exercised concurrently with its own, and to no greater extent than may be necessary for " their own use." The first question therefore is over the proper construction of the reservation in the deed made by Wright to Courtright in 1801.

At the outset of this inquiry we should bear in mind the well settled rule that words in a deed or written instrument should be taken most strongly against him whose words they are. We should remember also that these words of reservation are found in a deed that in every other respect purports to convey by formal and apt words a fee simple title to the land described. Coming now to the words of the reservation we notice (*a*) that they do not expressly embrace all the coal under the tract. The words are " coal for their own use,"—not the coal, or all the coal, or coal for the market, but so much and no more as the grantor or his heirs or assignees may need for their own personal use. We notice (*b*) that the right reserved is not, in terms, exclusive, but is capable of exercise concurrently with the exercise of mining rights on the part of the grantee. The words are, " reserves a free toleration of getting coal." This is equivalent to the words, " reserves the privilege " of getting coal. But for what ? The words of the reservation make the reply, " for their own use." This does not exclude the idea that the coal passed with the surface to the grantee, but does reserve a right of entry upon the land conveyed to get and carry away coal for the use of the grantor. But (*c*) the words do not necessarily or naturally imply more than is obviously expressed by them. Toleration for getting coal for one's own use does not necessarily or naturally mean getting coal for the market, or the exclusive right to get all the coal underlying the tract. On the other hand the words are capable of being un derstood as a reservation of the privilege to the grantor, his heirs and assignees, of supplying their personal needs for fuel from the coal granted by the deed, into which the reservation is incorporated, to the buyer. This, if all artificial rules are left out of view, is the plain natural meaning of the words em-

ployed when read in connection with the deed in which they are found.

The land with its minerals passed to Courtwright, subject only to the privilege reserved, and his title being now held by the defendant, it follows that the title to the coal, as a severed and separate estate, is not in the plaintiff, but was acquired, together with the surface, by Myers, and passed from him to the coal company defendant.

This renders a discussion of the other questions raised unnecessary. It is proper to say however that the learned judge was right in his view of the question raised upon the trial over the effect of adverse possession. Until a severance takes place between the surface and an underlying estate, the owner's title reaches from the center to the surface, and from the surface to the heavens; and with a grant of the land or an acquisition of title by an adverse holding, the entire estate of the former owner passes. When a severance takes place and the holder of a stratum of coal or other mineral records his title or enters into possession of his subsurface estate, he is not affected by the state of the title to, or the possession of the surface. This was very recently said in Plummer v. The Hillside Coal and Iron Company, decided at the present term [160 Pa. 483]. We rest the decision in this case on the construction of the deed and reservation, holding that the title to the coal passed to Courtright subject to the privilege reserved to the grantor, and his successor in title, of getting coal for their own use.

The judgment is affirmed.