# President, Managers and Company of the Delaware & Hudson Canal Company, Appellants, *v.* David Hughes and William Watkins.

*Mines and mining—Severance of coal from surface—Adverse possession —Statute of limitations.*

If there is no severance of coal from the surface, an entry upon the surface will extend downward and draw to it a title to the underlying minerals, so that he who disseizes another and acquires title by the statute of limitations, will succeed to the estate of him upon whose possession he has entered; but if a severance is made before his entry, and he has notice of that severance, either by the record, or by the state of the possession acquired both by observation and by years of service in the employment of the owner, his entry upon either of the estates will not affect the other.

Argued Feb. 24, 1897. Appeal, No. 263, Jan. T., 1896, by plaintiffs, from decree of C. P. Lackawanna Co., Sept. T., 1894, No. 5, on bill in equity. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity praying for an injunction to restrain the defendants from mining coal under certain lands claimed by plaintiffs. Before GUNSTER, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing bill.

*Wm. H. Jessup* and *James H. Torrey*, for appellants.—It is well settled by numerous authorities both in this state and in England that, where a severance of the surface from the underlying strata of coal or other minerals has taken place, no possession of the surface constitutes any possession of the underlying strata: Plummer v. Hillside Coal & Iron Co., 160 Pa. 483

Kingsley v. Hillside C. & I. Co., 144 Pa. 613; 1 Am. & Eng. Ency. of Law, 262; Putnam Free School v. Fisher, 34 Me. 172; Caldwell v. Copeland, 37 Pa. 431.

Title to any of the minerals, quite distinct from the title to the surface, may be shown by documentary evidence; in the absence of such evidence, or in opposition to it, title to them may be made out by proof of possession and acts of ownership under the statute of limitations. The acts of ownership, however, which constitute possession and confer title must be distinct from such as are exercised over the surface: Tyrwhitt v. Wynne, 2 Barn. & Ald. 554; Cullen v. Rich, Buller, N. P. 102; Rich v. Johnson, 2 Strange, 1142; Caldwell v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 284; MacSwinney on Mines, 526; Thew v. Wingate, 10 B. & S. 714; McDonnell v. McKinty, 10 Ir. L. R. 514; Dartmouth v. Spittle, 19 W. R. 445; Ashton v. Stock, L. R. 6 Ch. Div. 726; Seaman v. Vawdrey, 16 Ves. 392; Barnes v. Mawson, 1 M. & Sel. 84.

To constitute a continuous possession of mines, it is only necessary that the operations be prosecuted as continuously as the nature of the business and the custom of the country permit: Stephenson v. Wilson, 50 Wis. 95; Wilson v. Henry, 40 Wis. 594.

*S. J. Strauss,* with him *Ward & Horn, J. Alton Davis, Thomas P. Duffy* and *John T. Lenahan,* for appellees.—This was an ejectment bill, and the court was without jurisdiction: North Penna. Coal Co. v. Snowden, 42 Pa. 488; Leininger's App., 106 Pa. 398; Washburn's App., 105 Pa. 480; Mowday v. Moore, 133 Pa. 611; Jennings Bros. & Co. v. Beale, 158 Pa. 283; Ferguson's App., 117 Pa. 450.

In the absence of an actual severance land remains intact, unsevered, and but one estate. There is nowhere in our reports, a recognition of title in the coal or minerals distinct from the ownership in the surface, unless the severance arose by deed, by reservation, or by adverse possession of the thing itself: Armstrong v. Caldwell, 53 Pa. 289; Plummer v. Hillside Iron & Coal Co., 160 Pa. 483; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Caldwell v. Copeland, 37 Pa. 427.

*Wm. H. Jessup* and *James H. Torrey,* for appellants, in reply.

—In the case of trespass to mining property, greater latitude is allowed in courts of equity than in restraining ordinary trespass to realty, since the injury goes to the immediate destruction of the minerals which constitute the chief value of this species of property. Where, therefore, the trespass consists in the removal of ore from the plaintiff's mines, the legal title being complete, they are entitled to an injunction, even though an action at law would lie : High on Injunctions, sec. 730 (3d ed.); Beach on Injunctions secs. 1129, 1155; 10 Am. & Eng. Ency. of Law, 881; MacSwinney on Mines, 539; Hacke's App., 101 Pa. 245; Duffield v. Hue, 136 Pa. 608; Jennings Bros. & Co. v. Beale, 185 Pa. 283; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Ferguson's App., 117 Pa. 426; Grubb's App., 90 Pa. 228; Funk v. Haldeman, 53 Pa. 229; Alden's App., 93 Pa. 182.

The bill alleges the exclusive right in plaintiffs to the coal in the lands referred to, and that defendant is taking out and shipping the same by the carload by rail in such quantities that he will soon exhaust all said mines, and leave them without fuel for their steel mills, which was the chief inducement to the purchase. Continuous trespass of such character has frequently been restrained by injunction : Scheetz's App., 35 Pa. 88; Allison and Evans' App., 77 Pa. 221; Duffield v. Hue, 136 Pa. 602; Besanson's App., 70 Pa. 26.

The case of Leininger's Appeal, 106 Pa. 398, which is relied upon by the defendants' counsel is not in point. In that case it was clearly found that the defendants were in possession.

OPINION BY MR. JUSTICE WILLIAMS, October 25, 1897 :

This case presents a question of considerable importance to the owners of mineral lands, which does not seem to have been decided by the courts or to have been discussed by text writers, so far as we have been able to discover. It will be readily understood from a brief statement of the facts out of which it arises. The plaintiff company is engaged in mining and selling anthracite coal. As early as 1825 it was the owner of a considerable body of contiguous lands which had been purchased by it because of the coal underlying it. A tract known as the " Porter Tract," containing two hundred acres was part of this body of coal land. The coal upon it was opened by the company at some time between 1830 and 1835, and mining opera-

tions begun under it.   From that time to the present the company has been in the possession of its mineral deposit under the surface of the Porter tract by actual mining and by the use of the openings and gangways for purposes connected with the removal of coal from adjoining lands belonging to it.   The defendant derives his title from one Alexander McDonald who was an employee of the plaintiffs, and who entered upon the surface of the Porter tract in 1836 or 1837 and began a residence upon, and the cultivation of, a small portion of it.   It does not seem to admit of serious doubt that from 1850, and perhaps somewhat earlier, down for a period of more than twenty-one years, the possession of McDonald and his vendees of the land in controversy has been open, notorious, hostile and exclusive.   As to the surface, therefore, the defendant has acquired a title under the statute of limitations.   The question raised by this record is whether he has also, under the circumstances just stated, acquired a title to the underlying coal.   The general principles regulating the titles to upper and lower estates in the earth's crust are pretty well settled by our own cases.   The ownership of the surface carries with it, if there be no obstacle to the application of the general rule, title downwards to the center of the earth and upwards indefinitely.   So long as mineral deposits remain in place they are part of the freehold, and pass with it by deed, gift or other form of conveyance; but when the minerals are removed from their position or bed by mining they become personal property, and are sold like other personal chattels.   If the owner grants to another the right or privilege of taking coal from his lands this grant, if not an exclusive one, is not the grant of an interest in land, but of an easement or incorporeal right which leaves the title to the coal in place remaining in the grantor.   But a grant of all the coal, or of the exclusive right to mine the coal, is a sale of the coal in place.

The conveyance of the coal creates in the vendee an interest in land.   The deed or other conveyance is within the recording acts, and is subject to all the rules and regulations governing conveyances of the surface.   It may convey an estate in fee simple in the coal or other mineral, or any lesser estate, in the same manner and by the same words of grant made use of in conveyances of the surface.   When such a conveyance has been

made of the coal or other mineral it works a severance of the estate so conveyed from the surface, and if the deed be recorded it is constructive notice to all the world of the fact of severance. Thenceforward the owner of the soil may cultivate, inclose and reside upon his estate for any length of time, but his possession will not extend below it. It will not grasp' or affect in the slightest degree the estate below him which has been severed by the deed. In like manner the owner of the mineral estate may enter upon and operate it while the owner of the surface is leaving his estate unoccupied and wild, but the possession of the lower estate will not reach upward and attach to the surface. Each estate may be occupied, conveyed, incumbered, sold by the sheriff or allotted in partition, without any effect upon the other. If a trespasser enters either estate and maintains possession he can acquire title by the statute of limitations after twenty-one years to so much as he has actually held for that length of time; but his title will not extend above or below the estate on which he enters. If he would acquire any part of the mineral he must make his entry upon, and maintain his position within, the limits of the mineral estate, for the requisite period of time in an open, notorious, exclusive and continuous manner: Caldwell v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 284; Kingsley et al. v. Hillside Coal and Iron Company, 144 Pa. 613. A covert or clandestine entry will not do. Such an entry will confer no right on the wrongdoer until his entry is, or by the exercise of due diligence might be, discovered by the owner. Until then the owner cannot know that his possession has been invaded. Until he has, or ought to have, such knowledge he is not called upon to act, for he does not know that action in the premises is necessary, and the law does not require absurd or impossible things of anyone: Lewey v. Fricke Coal Company, 166 Pa. 536; Scranton Gas and Water Company v. Lackawanna Iron and Coal Company, 167 Pa. 136. Possession to be adverse must be open as well as continuous. The intruder must keep his flag flying in a visible and hostile manner: Plummer v. Hillside Coal and Iron Company, 160 Pa. 483. So far on in our inquiry we have a well beaten path to travel, but from this point forward we are without any definite landmark to guide us. The real question presented is, may there be a severance of the mineral estate from the surface by the acts of

the owners of the original freehold? And, if so, may there be notice in fact of such severance to other persons that will affect them in the same manner as the constructive notice arising from the recording of a deed? It is very clear, as we have seen, that if the deed to the plaintiffs had been for the coal under the "Porter Tract" only, the entry of McDonald upon the surface and his enclosure of a part of it would have had no effect upon the lower estate. The rule is well settled by the cases cited above. The reason of the rule is that the sale of the coal severed it from the surface, and the recording of the deed gave constructive notice to McDonald of such severance, whether he had any knowledge of it or not. But the plaintiffs' deed was for the whole of the land, including the soil and the minerals.

The company had the right, however, to develop and operate the mineral estate alone, if that was to its interest, and leave the surface untilled and uncleared. It elected to do so. It erected its breaker, opened its mine, extended its gangways, arranged its tracks and sidings, and began the production of coal for the market from beneath the surface of the "Porter Tract" and its adjoining lands. In this manner it entered upon the actual possession of its mineral estate. For more than sixty years it has continued its possession without interruption in a manner that has been obvious to all persons in the neighborhood. No person could pass or enter upon the land without being confronted with the unmistakable proofs of the possession and active operations of the plaintiff company in this, its subterranean estate. These proofs, including the structures, the culm piles, the prepared coal, the movements of men and cars about the pit's mouth, brought the knowledge of the plaintiffs' operations to even the most casual observer, in a much more effective and satisfactory manner than it could have been done by the mere existence of a recorded deed. Why should it not have the same legal effect? In this case there is still another element of notice ; for the defendant not only made his entry upon the surface with full knowledge from the acts of the owner of his severance and the occupancy of the lower estate by it, but he was in its employ, assisting in its mining operations. He was one of the persons by whose labor the plaintiff company preserved its possession and kept its own flag flying. Surely notice could go no farther than this. The recording of a deed is

notice, notwithstanding the party to be affected by it may never have known of its existence or of the severance wrought by it, because he might have known if he had exercised the vigilance the law requires of him, and examined the record. So, it is well settled, possession is notice, although the person to be affected did not know of it. It was his duty to take notice of the possession as well as of the record, and if he failed to do it, it was his folly. He is held to know, because he might have known if he had made the examination which it was his duty to make. Here the possession of the owner was known. The estate in which it was at work was known; and the defendant was in its service, contributing by his own labor to the development of the mineral estate and to the maintenance of his employer's possession. This was notice by, and because of, the clearest knowledge of all the facts. McDonald had this knowledge when he first entered upon the surface, and he was affected by it. He knew of the actual severance of the estates in the Porter tract. He knew the owner was in the exclusive possession of the lower one, and himself assisted as an employee in the work by which that possession was made visible and notorious. He never did anything to challenge its possession of the mineral estate. On the contrary all he did, aside from the erection of a shelter on the surface, was as servant of the owner, under its direction, and in the clearest recognition of, and subserviency to, its title. Under such circumstances it is plain that if he acquired a title to the surface of the six acres he claims, he could not clutch also the mineral estate, or any part of it, that lay below the surface.

It would be inequitable and unjust to hold otherwise in this case. He had stolen in upon the surface while at work for the company that owned both it and the coal. He knew of the severance in fact of these estates, and aided in the general work that made the severance evident to the world. If entering under such circumstances he could acquire the surface, he is limited to it. Knowing all the facts he was bound, if he desired to acquire title to his employer's mine or any part of it, to enter upon the mineral estate at some point, take possession, hold it openly and adversely for twenty-one years, so that his position and claim could have been known to the owner. Any different holding would lead to very absurd results. It would require

us to hold that constructive notice is better than actual notice. Even this is short of a full statement of the result of the contrary doctrine, for in reality it would require us to hold that notice in fact had no significance and bound no one. If McDonald was not bound by the complete knowledge he possessed, and the opportunity for inquiry which his relations to the owner afforded him, it would follow that actual knowledge did not so much as put him upon inquiry. It would be much more reasonable to strike down the constructive notice which the law raises from the recording of a deed than thus to put it out of the power of an owner to protect himself by the clearest disclosure of his possession of his estate, and its purpose, to one of his own employees. But it is said that the company was not engaged in mining immediately under the six acres of surface occupied by McDonald, and that there was considerable unmined coal in place directly below his enclosure. McDonald entered upon the surface of the Porter tract, knowing of the severance of the coal under it from the surface. The plaintiffs' mineral estate was protected as fully by this actual knowledge as it would have been by constructive notice; and no title by the statute of limitations could be acquired within the limits of that estate without an entry upon it. An entry upon another estate, that upon the surface, can have no effect outside the estate entered. If there is no severance an entry upon the surface will extend downward and draw to it a title to the underlying minerals; so that he who disseizes another and acquires title by the statute of limitations will succeed to the estate of him upon whose possession he has entered. But if a severance is made before his entry, and he has notice of that severance, either by the record or by the state of the possession acquired both by observation and by years of service in the employment of the owner, his entry upon either of the estates will not affect the other. Possibly the question of the extent of the possession of a trespassing miner acquired by reason of his entry upon the mineral estate may sometime be presented. If so it will be time to consider it when it comes before us. It is not in this case. As applicable to the facts now before us, we hold that the Porter tract, or so much of it as was accessible from the pit's mouth in use, so that coal could be mined and removed therefrom by the ordinary methods of mining, was in the actual

possession of the plaintiffs, and that no enclosure upon the surface of that tract by one who had notice of the severance would draw to it any part of the mineral estate within its limits. This disposes of the suggestion that the unmined coal under the six acres has been, or could be acquired by McDonald by virtue of his possession on the surface. He acquired the surface because he put his actual possession against the constructive possession of the owner. He did not acquire the coal because he had actual notice of its severance from the surface by the owner. This limited his possession to the estate on which he entered. These views require us to reverse the decree of the court below, to restore the preliminary injunction, and upon the facts that are undisputed to make the injunction perpetual. The costs of this appeal to be paid by the appellees.