# Birmingham Fuel Co. *v.* Boshell.

## *Ejectment.*

(Decided December 17, 1914.  67 South. 403.)

1. *Ejectment; Plaintiff's Title.*—In ejectment a plaintiff may recover as against a trespasser on proof of prior possession, although not in actual possession when the trespasser entered.

2. *Same; Defenses.*—Where a defendant does not connect himself with the prior possession, he cannot defeat a recovery by plaintiff in ejectment, by proving a possession prior to that of the plaintiff in a third person.

3. *Same; Common Source of Title.*—Where a defendant in ejectment denies that he claims from the common source, plaintiff may show that he does so claim by introducing in evidence the deed connecting the defendant with the common source, although the evidence proves that defendant's title is worthless.

4. *Mines and Minerals; Severance; Effect.*—After a severance of the minerals from the surface, possession of the surface is not possession of the minerals, since the severance creates two closes, adjoining but separate.

5. *Same; Adverse Possession.*—Where the minerals have been severed from the surface by a proper conveyance, to acquire title to mineral rights by adverse possession, there must be an actual taking or use under claim of rights to the minerals for the necessary period.

6. *Ejectment; Evidence.*—For the purpose of showing that defendant and plaintiff claimed through a common source, the defendant may introduce in evidence conveyances under which plaintiff claims, establishing the common source.

7. *Same; Presumption.*—Where there was evidence that in 1858, a patentee obtained a patent from the United States government, that in 1861 a third person conveyed by warranty deed the land under which one of the parties showed title, and the evidence showed that such patentee and such third person and the third person's grantee were the only persons in possession, the court must presume that the patentee executed a deed to such third person, so as to form a complete chain of title.

(Mayfield, J., dissenting.)

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Ejectment by W. R. Boshell against the Birmingham Fuel Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

DAVIS & FITE, PERCY, BENNERS & BURR, and W. H. SMITH, for appellant.

BANKHEAD & BANKHEAD, for appellee.

DE GRAFFENRIED, J.—This suit involves the title to the mineral rights in the S. E. ¼ of S. W. ¼, section 13, township 14, range 9, Walker county, Ala.

This opinion is written as expressive of the views of the members of this court who appear as concurring therein; and, as the case must again be tried, we deem it well to announce the following propositions of law, which appear to have applicability to the facts of the case as they are disclosed by the bill of exceptions in this record:

(1, 2) First. "As against a trespasser, a plaintiff in ejectment, or the statutory action in the nature of ejectment, may recover on proof of prior possession, al-

though he was not in the actual possession when the defendant entered; and the defendant cannot defeat his right to recover by proof of an anterior possession by a third person, with which he does not connect himself."—*L. & N. R. R. Co. v. Philyaw,* 88 Ala. 264, 6 South. 837.

(3) Second. "Where the defendant denies that he claims from the same source as the plaintiff, the latter may show that he does so claim, by introducing in evidence the various deeds connecting him with such alleged common source; and it is no objection to the exercise of this right that the evidence offered proves the defendant's title to be worthless."—*Bradley v. Lightcap,* 201 Ill. 513, 66 N. E. 546; *McWhorter v. Heltzell,* 124 Ind. 129, 24 N. E. 743; Warville on Ejectment, p. 275, § 265.

In the case of *Vidmer et al. v. Lloyd,* 184 Ala. 153, 63 South. 947, this court said: "It may be true that defendant announced that he did not claim through Adele Rabby; yet there was evidence from which the jury could infer that he did,  *  *  *  and, if such was the case, he is estopped from denying her title."

See further, on this subject, *Pendley v. Madison,* 83 Ala. 484, 3 South. 618; *Lewis v. Watson,* 98 Ala. 480, 13 South. 570, 22 L. R. A. 297, 39 Am. St. Rep. 82; *Ware v. Dewberry,* 84 Ala. 568, 4 South. 404; *Houston v. Farris,* 71 Ala. 570; *Tenn. & Coosa River R. R. Co. Co. v. East Ala. Ry. Co.,* 75 Ala. 516, 51 Am. Rep. 475.

(4) Third. "After severance of the mineral in situ from the surface, the possession of the latter is not possession of the former. The effect of the severance is to create two closes adjoining but separate."—*Hooper v. Bankhead,* 171 Ala. 632, 54 South. 549.

(5) In other words, after a severance of the minerals in suit from the surface, the acquisition of the title

to the surface by adverse possession of the surface does not result in the acquisition of title to the mineral interests in the land. To acquire, by adverse possession, the title to the mineral interest so severed, there must be an actual taking or use under claim of right of the minerals from the land for the period necessary to affect the bar.

"Under the authorities, it is essential, to effect adverse possession of the minerals, after severance, in title, from the surface, that the adverse claimant do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory, or temporary—acts suitable to the enjoyment and appropriation of the minerals so claimed, and hostile to the rights of the owner."—*Hooper v. Bankhead*, 171 Ala. 633, 54 South. 549; *Gordon v. Park*, 219 Mo. 600, 117 S. W. 1163; *Gill v. Fletcher*, 74 Ohio St. 295, 78 N. E. 433, 113 Am. St. Rep. 962; *Algonquin Coal Co. v. Northern Coal & Iron Co.*, 162 Pa. 114, 29 Atl. 402; *Huss v. Jacobs*, 210 Pa. 145, 59 Atl. 991; *Armstrong v. Caldwell*, 53 Pa. 284; *Delaware & Hudson Canal Co. v. Hughes*, 183 Pa. 66, 38 Atl. 568, 38 L. R. A. 826, 63 Am. St. Rep. 743; *Plant v. Humphries*, 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N. S.) 558; *J. R. Crowe Coal & Mining Co. v. Atkinson*, 85 Kan. 357, 116 Pac. 499, Ann. Cas. 1912D, 1196; *Catlin Coal Co. v. Lloyd*, 180 Ill. 398, 54 N. E. 214, 72 Am. St. Rep. 216.

The proposition under discussion seems to be so well established that it appears needless to cite the above authorities to sustain it. The principle is, however, of importance in this state, and for that reason the writer of this opinion has above perpetuated some of the leading authorities upon the subject, and which are cited in the numerous briefs on file in this case.

(6) Fourth. The undisputed evidence in this case shows that J. C. Myers obtained a patent from the United States government to the lands in which the mineral interests are claimed by the defendant, on March 1, 1858. On December 13, 1861, John Manasco conveyed by warranty deed to Sarah Cox the said lands. It appears that Sarah Cox was the daughter of John Manasco, and that he gave her the land, and that he put her in possession of it prior to the execution of his deed to her. On this subject the husband of Sarah Cox testified as follows: "Sarah Cox and I were married before the above said deed was executed. My best judgment is that we moved on the place before the deed was made to the above-described land. My wife claimed to be the owner. My best judgment and recollection is we lived on this land as our home until 1862 or 1863, when I went to the war, when my wife moved down to her father's. After the close of the war, Sarah Cox, my wife, and I moved back on this land and lived there until 1867, when we again left the place and then we, after a year's absence, moved back home; that is, on the land you are questioning me about. We then lived on this land until 1874, when we moved to Jasper, Ala."

At the time John Manasco gave this land to his daughter, he was in possession of the land, and there was evidence that he bought the land from said John C. Myers, although the record fails to show that there was a deed from Myers to Manasco evidencing the purchase. On this subject J. K. P. Manasco, a brother of Sarah Cox, testified as follows: "John Manasco raised me. I knew John C. Myers. He lived southwest of where I was raised prior to the Civil War. I went over the ground with Mr. Phil and pointed out the place where the house was, the old trees, and the farm. There was more than one field; one was this side of where the old

house was, in the S. E. ¼ of the S. W. ¼ of section 13, of about eight or ten acres. I am older than Dr. John Manasco. I helped plow the S. E. ¼ of the S. W. ¼, section 13, when it wes being cultivated by John Manasco. He first took possession, my recollection is, about 1858 or 1859. I could not swear to the date; it was so long ago. Sarah Cox moved on some part of the land before the war. Prior to the time she moved on it, the land had been in cultivation by John Manasco. There were ten acres said to be inclosed. There was a little piece of woods in there that was not cultivated. Sarah Cox moved back on the land after the close of the war. I was gone eight years, but Sarah lived on that land after the war. I don't know how long, because I was away. I had a favorite mule they let go in part payment for the land purchased by John Manasco from J. C. or John C. Myers. I don't exactly remember the date. We tended it about three years before Sarah Cox moved on it, and that would make it about 1856 or 1857. We cultivated it the next year. John Myers moved to Moss Creek."

The evidence further shows that Sarah Cox and her husband, J. E. Cox, sold the mineral interest in the said land to the Georgia Pacific Railway Company, by a deed dated May 2, 1883, and that, by an unbroken chain of title, the defendant claims and owns the mineral interest in the land which was derived by said Georgia Pacific Railway Company by the deed made to said company by said Sarah Cox on May 2, 1883. The evidence further shows that on the 21st day of January, 1888, the heirs of said Sarah Cox filed their petition for a sale of said S. E. ¼ of S. W. ¼, section 13, township 14, range 9, Walker county, except the coal, iron ore, and other minerals therein, for division, and that D. J. Townley appeared at the sale and bought

the land. The decree of sale was dated the 6th day of February, 1888, and the sale was made the 5th day of March, 1888, and was so reported and confirmed. The report showed the relinquishment by J. E. Cox, the surviving husband of Sarah Cox, of all his interest in said lands, so that the same might be sold, and showed a receipt by the heirs of said Sarah Cox, deceased, of their respective portions of the purchase money.

The above being the undisputed testimony, the defendant, for the purpose of showing that the plaintiff and the defendant claimed through a common source of title, viz., Sarah Cox, offered in evidence the following:

(1) A deed from C. L. Cunningham, commissioner appointed by the probate court to convey the title of the heirs of Sarah Cox to said land to the said D. J. Townley, the purchaser at said sale for division. This deed bears date October 2, 1889, and was duly recorded in record of deeds of Walker county on October 2, 1889.

(2) A deed from D. J. Townley and wife to R. M. Townley to said land, dated January 3, 1889, and acknowledged in December, 1890. The plaintiff claimed title to the land through a deed which was made to him by said R. M. Townley, dated March 21, 1896.

Under the authorities cited under subdivision 2 of this opinion, the above deeds were relevant for the purposes for which they were offered, and the trial court committed reversible error in sustaining the objection of the plaintiff to their introduction in evidence.

Fifth. In addition to the above, the evidence in this case shows, without dispute, that Manasco bought this land from J. C. Myers in 1858, probably about the time Myers obtained his patent to the land from the federal government. Manasco then went into its possession, claiming it as his own, and finally gave it to his

daughter, who, so far as the record discloses, was in possession of the land until she died. It is true that during a part of that time she did not actually cultivate the land or live on it, but a part of it was under her fence, and she paid taxes on it, and in 1883 she sold the mineral interest in it to the Georgia Pacific Railroad Company. After her death it was sold as the land of her heirs.

(7) If there was, prior to the purchase by D. J. Townley of the surface rights to these lands at the partition sale of the lands by her heirs on March 5, 1888, any person who, at any time, was in possession of this land other than J. C. Myers, Manasco, Sarah Cox, and, after her death, her heirs, or if, at any time during those years, a foot in hostility to the rights and possession of these parties was placed upon this land, the record fails to show it. This being true, it would seem that the law will, under the evidence in this record, presume that Myers made a deed to Manasco to this land in 1858 when Manasco obtained possession of said land from Myers.—*Bolen v. Hoven,* 150 Ala. 448, 43 South. 736; *Normant v. Eureka Co.,* 98 Ala. 181, 12 South. 454, 39 Am. St. Rep. 45; *Wilson v. Holt,* 83 Ala. 529, 3 South. 321, 3 Am. St. Rep. 768; *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584, 6 South. 197, 13 Am. St. Rep. 73.

For this reason, as well as for the reasons set forth in the first subdivision of this opinion, in our opinion the defendant, under the evidence as it exists in this record, was entitled to affirmative instructions in its behalf.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, and GARDNER, JJ., concur in the opinion and conclusion.

[Birmingham Fuel Co. v. Boshell.]

MAYFIELD, J., concurs in the reversal of the judgment but does not concur in the opinion.

MAYFIELD, J.—(Dissenting.)—This record was originally assigned to me, and I wrote an opinion affirming the judgment. On application for a rehearing by the whole court, the judgment of affirmance was set aside, and one of reversal entered; and Mr. Justice DE GRAFFENRIED was appointed to write an opinion for the majority.

I concur in the reversal. I have become convinced, on further consideration, that it was reversible error to decline to allow the defendant to introduce the commissioner's deed to D. J. Townley and the deed of D. J. Townley to R. M. Townley. While the trial court evidently acted on the theory that plaintiff did not claim title through Mrs. Cox, and it was not shown that Mrs. Cox had title when she conveyed the mineral right to the Georgia Pacific Railroad Company, and therefore her deed did not operate as a severance of the minerals from the surface, I now think that each of these questions was for the jury, and not for the court, and that the defendant was entitled to have the jury consider these deeds in connection with all the other evidence.

I cannot, however, agree to the proposition that the evidence in this case shows that Mrs. Cox had title to the lands when she conveyed. The evidence conclusively and without dispute shows that, if she acquired the title, it was by adverse possession, and not by deed. The evidence likewise fails to show that her possession was continuous, but, on the contrary, shows that there were several breaks therein, and that at no time was there ten years' continuous possession. The evidence, as I read it, is in dispute as to whether her grantor, her

father, was ever in possession of the land or was in possession when he conveyed to her.

How there is any reason for the application of the doctrine of the presumption of a deed from the patentee to Manasco, I cannot understand. If Manasco had been in possession for 20 or 30 years, under his contract of sale, the execution, or the existence of a deed, might then be presumed; but the evidence is without a dispute that he was not so in possession for the length of time necessary to raise the presumption of a deed. If a deed from the patentee to any one is to be presumed, it is either to Mrs. Cox or to the plaintiff. The evidence, however, affirmatively shows that he did not convey to Mrs. Cox nor to her father.

If it be conceded that Mrs. Cox had title to the land when she attempted to convey the mineral right to the Georgia Pacific Railroad Company, then, of course, this worked a severance of the two estates; and, if plaintiff claimed through Mrs. Cox, his possession of the surface was not possession of the mineral, and of course was not adverse; but, if Mrs. Cox had no title, her deed did not and could not operate as a severance. A stranger to a title cannot create a severance by conveying the mineral or surface right. It requires the owner of the title to convey in order that his deed may operate as a severance. Moreover, when there is such a severance, it is binding only on the parties to the conveyance and their privies. It is not binding or effective upon strangers to the title of the owner who severed; but of course there must be adverse possession of both estates, to defeat the title of the true owner who severed the two estates. The two estates, after severance, are as distinct and separate as if the grantor had owned an 80-acre tract and conveyed one 40 to A. and the other to B. Possession of one 40 after this severance

[Birmingham Fuel Co. v. Boshell.]

would not be possession of both. But if the owner should convey one 40 to A., and then convey both to B., and B. should take possession of one of the 40's under his deed and hold the possession adversely to A. for 10 consecutive years, B. would acquire title to the 40 theretofore conveyed to A., although he had no actual possession of the 40 conveyed to A. Surely the severance of the mineral from the surface cannot be more complete than would be the severance as to the two 40's, as stated above.

In my judgment, under the holding in the above case, one who has no title may convey a title to the mineral, against the true owner, by conveying the minerals to one person and the surface to another, if the grantee of the surface should ever thereafter convey to the owner or to any one in his chain of title, and even though the owner did not claim under such chain of title but claimed against. I cannot make a man claim title through me by conveying his own land to him, even though he accept the deed and put it on record. This is only a circumstance tending to show that he does claim title through me.

There was no proof in this case that the plaintiff or his grantor claimed title or right through Mrs. Cox. It was only shown that the grantor of plaintiff's grantor bought at a judicial sale, which sale passed the title of Mrs. Cox to the surface. I do not see how the court can say, as a matter of law, that Mrs. Cox had title to the land when she conveyed the minerals or of the surface when she died. If she had such title, it was a question of fact for the jury and not of law for the court.

I likewise cannot see how the court can say, as a matter of law, that plaintiff claimed title through Mrs. Cox, when he, his counsel, and the trial court say he

[Birmingham Fuel Co. v. Boshell.]

did not so claim title; and the only evidence to the contrary is the circumstance of the two deeds which the trial court excluded. Surely these deeds ought not to conclude the plaintiff, who is not a party to either, and when he swears he does not claim under or through them.

Of course I recognize the proposition that prior possession alone will support or defend an action of ejectment; but it will only do so against a mere naked trespasser or one who cannot show a better title; it will not be effective against the true owner nor even against one, claiming under color of title, having held adversely for ten years. The evidence in this record is without dispute that plaintiff had acquired title to the land in question, surface and mineral, by adverse possession, if there was no severance of the two estates, or if the plaintiff was not bound by the severance. I cannot agree that the record in this case shows conclusively that Mrs. Cox had any title to the surface or mineral when she attempted to convey the minerals. I think it is conceded that her grantor had no legal title, and that title only can prevail in this suit. I think it also clearly appears (but not conclusively) that her possession was not continuous, so as to ripen into title. If she did not have the legal title when she conveyed to the Georgia Pacific Railroad Company, then her deed could not operate as a severance. Unless the plaintiff claimed title through her, he was not estopped from disputing her title. These questions were, in my judgment, for the jury, and not for the court; and the record shows that the jury found the facts in favor of the plaintiff.

The case most relied upon by appellant is that of *Canal Co. v. Hughes,* 183 Pa. 66, 38 Atl. 568, 38 L. R. A. 826, 63 Am. St. Rep. 743. It is probable that this case may uphold the contention of the appellant; but,

it is, at best, an extreme case; and, while it has been often cited, it has not been followed in a concrete case, and has been criticized by courts and text-writers as carrying the doctrine of severance too far.

Mr. Lindley, in his recent edition of his work on Mines (volume 3, § 812, pp. 2002, 2003), says: "The doctrine of severance of title has been carried by the Supreme Court of Pennsylvania to what seems an unwarrantable conclusion."

"We submit that severance of title, as known in the law, cannot exist where the surface and mineral title reside in the same individual. It would be, on its face, a contradiction of terms." ·

"The decision of the Pennsylvania court would therefore seem to have the effect of allowing an actual possession to be overcome by a constructive possession."

It would be an anomaly to allow strangers to a good chain of title to make the holders under that chain claim under another and an imperfect title by making deeds to them and having the same recorded, against the wish or will of the holders of the good title. So far as this record shows, that might be the result of making Boshell claim under the Cox chain of title. Surely a stranger to a title cannot create a severance by conveying that which he has not, and thereby defeat the title of the true owner and his grantees.

I desire to say that I do not disagree to any proposition of law announced in the opinion. Each of these I consider well settled and well stated; but I cannot agree to the application of the principles to the case made by this record, for the reason above stated.